## *In re* PULSIFER and others.

*(District Court, N. D. Illinois. July, 1880.)*

1. PROMISSORY NOTES—RIGHTS OF HOLDER.

A holder of promissory notes can only collect from the surety what remains due on the notes after deducting the amount received from the principal debtor.

2. BANKRUPTCY—PROOF OF CLAIM BY CREDITOR.

A creditor has no right to prove his debt and receive dividends on any more than the amount of the bankrupt's liability; so a bankrupt indorser is liable only for the balance due on notes indorsed by him after deducting the amount paid by the maker of the notes.

3. STATE STATUTES—NO EXTRATERRITORIAL OPERATION.

The holder of dishonored notes cannot import into his state the statutes of another state relating to the protest of negotiable paper. Such statutes are purely local regulations, enforceable only in the state where the statute prevails, and are not such a part of the contract as to be chargeable to the bankrupts on their contract of indorsement or guaranty.

In Bankruptcy.

*H. B. Hopkins,* in favor of motion.

*Rosenthal & Pence,* for claimant.

BLODGETT, D. J. The facts bearing upon the question raised are substantially these:

In August, 1877, the firm of Pulsifer & Co., who were bankers at Peoria, in this district, were adjudged bankrupts in this court. Soon after this adjudication, and some time in the month of August, 1877, the Bank of Commerce proved and filed with the register to whom the case had been referred, a claim against the estate of the bankrupts, based upon three promissory notes indorsed by the bankrupts as follows: (1) One note of Woolner Brothers, of Peoria, for $15,000, dated February 26, 1877, and payable to the said Pulsifer & Co. in four months after date, and indorsed to the bank, "Pay Bank of Commerce. S. Pulsifer & Co." There was also indorsed on the back of this

note an absolute guaranty, by bankrupts, of the payment of this note, with interest at the rate of 10 per cent. per annum after due, but which, in the view I take of the case, cuts no special figure in the questions raised here. (2) A note of Woolner Brothers for $15,000, dated June 2, 1877, and payable to Pulsifer & Co. 90 days after date, indorsed by Pulsifer & Co., "Pay Bank of Commerce. S. Pulsifer & Co." (3) Note of Woolner Brothers for $10,000, dated May 11, 1877, payable four months after date, indorsed, "Pay T. C. Van Blarcum, Acting Cashier. S. Pulsifer & Co.;" Van Blarcum being, at the time of such indorsement, acting cashier for the bank, and the indorsement being for the benefit of the bank.

On the eighth day of March, 1878, a supplemental proof of said claim was made and filed; and this application involves the sufficiency of the claim as shown under the original and supplemental proof. Proof has been taken under the thirty-fourth rule, and an issue made and certified into court upon the said application.

The questions raised by the issue are as to the amount for which the bank is entitled to prove its claim under said notes. The claim as proven was for the full face of the three notes, $40,000, with interest on the first note after due as per stipulation in bankrupts' guaranty indorsed on note, $40,270; statutory damages of 4 per cent. under Missouri statute, $1,600; total, $41,-870.

By the supplementary and amended proof, the bank gave credit for the sum of $1,410.07, standing on its books to the credit of Pulsifer & Co. at the time of their bankruptcy, which the bank had retained and credited on this indebtedness.

About the time that the firm of Pulsifer & Co. were adjudged bankrupts, proceedings in bankruptcy were also commenced in this district against the firm of Woolner Brothers, the makers of the notes in question, and said firm made a proposition for composition on payment of 30 per cent., which was accepted by their creditors, and the bank, as the holder of the paper now in question, was, by express agreement with the trustee of Pulsifer & Co., approved by this court, allowed to accept this composition without prejudice to its claims against the Pulsifer estate as indorsers of said note.

This composition by Woolner Brothers was paid in full by two installments half on October 18 and half on November 21, 1877. The total amount received and applied by the bank on these notes, under the Woolner composition, was $12,224.25. But in making its supplemental proof in March, 1878, although the bank had then received the 30 per cent. on the notes from the Woolners, it makes its proof for the full face of the notes as they stood at the time Pulsifer & Co. were adjudged bankrupts, and the 4 per cent. statutory damages, claiming that the bankrupts' estate was not entitled to credit for the amount received from Woolners "until the dividends from bankrupts' estate have paid 70 per cent. of the whole claim."

The questions now presented upon the application to reduce this claim, as it is asserted in the supplemental proof, involves the right of this creditor (1) to prove its debt and draw dividends from the

bankrupts' estate for the full amount due on the notes, without deducting this payment made by the Woolners; (2) the right of this creditor to prove the 4 per cent. statutory damages allowed the state of Missouri to be collected by the holder of a dishonored negotiable bill of exchange or note against the maker or indorser, "in lieu of charges of protest, and other charges and expenses." 1 Rev. St. Mo. c. 10, § 544.

There is no doubt that it has been repeatedly held, under our bankrupt law, that even if the holder of a note has received a sum of money from an indorser, he may nevertheless prove it in full against the estate of the maker in bankruptcy, and collect as much as he can, and any surplus he may receive over the amount actually due the holder, will be held in trust for the indorser or surety. *Ex parte Talcott*, 9 N. B. R. 502; *In re Weeks*, 13 N. B. R. 263; *In re Ellerhorst & Co.* 5 N. B. R. 144; *Downing* v. *Traders' Bank*, 11 N. B. R. 371.

And the right to prove the full amount of these notes against the estate of the bankrupt is insisted upon on the authority of these and analogous cases. But here the bankrupts are only sureties on these notes. Woolner Brothers are the principal debtors, and the bankrupts only made themselves contingently liable, on their contract as indorsers, to pay in case the makers did not.

It is very clear to me, therefore, that the bank, as the holder of these notes, can only collect from the surety what remains due on the notes after deducting the amount received from the principal debtor. The same rule must apply in the case as would hold if a suit at law had been brought by the bank against the bankrupts as indorsers of this paper. If the notes had been proved by the bank as holders against the estate of Woolners, the right to prove in full, notwithstanding payments received from the indorsers, would be manifest, because any excess collected would be held for the benefit of the surety; but an excess collected from these bankrupts could not be held in this case for the benefit of the makers; and it is obvious that, as against the other creditors of the bankrupts, this creditor has no right to prove its debt and receive dividends on any more than the amount of the bankrupts' liability on the paper.

I am, therefore, of opinion that the claim must be reduced by the reduction of the Woolner payment.

As to the claim for 4 per cent. statutory damages, it is admitted that the notes in question were made in this state; that the makers

and payees reside here; that the bank was the St. Louis correspondent of the bankrupts; and that the bank discounted the notes in due course of business, upon request of bankrupts. The notes having been dishonored, can the bank import into this state the Missouri statute regulating the damages to be recovered by the holder of protested negotiable paper, and have these damages allowed him here? This is purely a local regulation, enforceable only in the state where the statute prevails, and does not, in my view, become so far a part of the contract as to be chargeable to the bankrupts in this state on their contracts of indorsement and guaranty.

The statutes passed by the various states regulating the damages to be recovered by the holders of negotiable paper, vary so much that such a rule of damages against indorsers or makers upon this class of paper would be so variable that no party putting afloat a piece of negotiable paper could tell what his liability would be. I find no express authority bearing directly on this question save the case of *Fiske* v. *Foster*, 10 Metc. 597, where the supreme court of Massachusetts held that the statute of the state of Maine, regulating the damages upon suits between parties to negotiable paper, should have no extraterritorial ·operation. The reason on which the decision was made seems to me sound, and I do not find that the case has been doubted or overruled.

An order will, therefore, be made reducing the claim by the amount paid under the Woolner composition and the amount of the statutory damages.