## In re HENRY & S. G. LINDEMAN.

(District Court, S. D. New York. October 9, 1916.)

1. BANKRUPTCY ⬀316(4)—CLAIMS—INDORSEMENT OF NOTES.
Under the law of New York, the obligation of both the indorser and the maker of a note is original, there being no relation of suretyship as in some other jurisdictions, and therefore a creditor can base a claim against a bankrupt on notes of third parties payable to the bankrupt and indorsed by it to the creditor.
[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 476; Dec. Dig. ⬀316(4).]

2. BANKRUPTCY ⬀316(4)—CLAIMS—INDORSEMENT OF NOTES—PAYMENT.
Where a bankrupt was liable as indorser on a number of notes one of which was paid by the maker after the bankruptcy, each note must be treated by itself, not all together as creating one obligation, and the payment extinguishes the liability of the bankrupt on that note, notwithstanding the rule that the status of a claim is determined as of the date of the filing of the petition.
[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 476; Dec. Dig. ⬀316(4).]

3. BANKRUPTCY ⬀316(4)—CLAIMS—INDORSEMENT OF NOTES—RENEWAL NOTE.
A claim against a bankrupt indorser of notes is not defeated by the claimant, after the bankruptcy of the indorser, taking from the original maker an unindorsed renewal note, since it is then impossible to secure the indorsement, though taking such a note before the bankruptcy of the indorser would extinguish his liability.
[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 476; Dec. Dig. ⬀316(4).]

In Bankruptcy. In the matter of the bankruptcy of Henry & S. G. Lindeman, a corporation. On certificate of the referee after an order sustaining objections to a claim of the Gotham National Bank. Order reversed in part, and affirmed in part.

Wilder, Ewen & Patterson, of New York City (Ward V. Tolbert, of New York City, of counsel), for the motion.
Wentworth, Lowenstein & Stern, of New York City, opposed.

MAYER, District Judge. The motion comes up on the certificate of a referee in bankruptcy who has entered an order sustaining the objections of the trustee to the claim of the Gotham National Bank and fixing a day for the taking of testimony for the purpose of fixing the value of certain alleged security, and further directing that, if the value of the security shall appear to be less than the face value of the claim, then the bank shall be allowed to file an amended claim for the

⬀For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

difference between the total amount of the claim and the value of the security.

The facts are as follows: The Gotham National Bank filed its proof of claim in due course for the sum of $8,141.94. The trustee objected to $7,424.80 of said claim, which last-mentioned amount is based on the following promissory notes:

| Maker | Date | Amount |
|---|---|---|
| A. N. Pickerill | May 20, 1914 | $ 110.00 |
| Warren Collins | May 21, 1914 | 139.00 |
| Milton Piano Co | May 27, 1914 | 710.00 |
| W. K. Cayton | July 31, 1914 | 125.00 |
| Jameson-Allen Piano Co | Aug. 31, 1914 | 1,136.80 |
| Crafts Piano Co. | Aug. 7, 1914 | 1,400.00 |
| S. Z. Marks Co | Aug. 15, 1914 | 1,849.00 |
| Crafts Piano Co | Aug. 15, 1914 | 1,955.00 |

—all of which were made to the order of the bankrupt.

The bank conceded:

"That the first note of $110 has been paid. The second note of $139 we took a new note for from Warren Collins. The third note for $710, there was no new note in regard to that. The $125 we accepted a new note from W. K. Cayton. As to the other notes, those were all notes payable to the bankrupt which he discounted. We hold these notes, and they have not been paid."

From the record it does not appear when the bank accepted other notes of the original makers in place of the Collins & Cayton notes without the indorsement or consent of the bankrupt.

[1] First. The five notes upon which as yet no payments have been made, and which, presumably, are still in the possession of the bank:

The holding of the referee was based on the theory that the liability of the maker was collateral security for the payment of the note by the bankrupt who was the indorser. The referee evidently sustained the contention of the attorneys for the trustee that there is a distinction between a case where the bankrupt is the maker and a third party the indorser, and a case where a third party is the maker and the bankrupt is the indorser.

Whatever may be the law in other jurisdictions, the New York law is that the holder of a note may recover from the maker or the indorser, as he pleases, or recover as far as he can from one and recover the remainder from the other. So far as the holder of the notes is concerned, the obligation of the indorser to him is an original obligation, and there is not a contract of suretyship such as may exist in some other jurisdictions.

Judge Blodgett, in Re Pulsifer (D. C.) 14 Fed. 247, cited by counsel for the trustee, says:

"But here the bankrupts are only sureties on these notes. Woolner Bros. are the principal debtors, and the bankrupts only made themselves contingently liable, on their contract as indorsers, to pay in case the makers did not."

It was on the theory that the indorser was a surety that he came to his conclusion. Here, however, the obligation of the maker does not constitute surety in aid of or collateral to the obligation of the bankrupt as indorser and the position taken by the bank was entirely sound, and the order of the referee must in that regard be reversed.

[2] Second. The Pickerill note for $110: The record is silent as to when this note was paid but from the argument and briefs it is apparently conceded to be the fact that this note was paid after the filing of the petition in bankruptcy. The bank insists that the status of a claim is as of the date of the filing of the petition. That statement, broadly speaking, is correct when it is sought to ascertain and determine the rights between the parties where the claim remains unpaid. The bank also presumably proceeds upon the theory that the obligations of the bankrupt constitute an entire obligation even though the bankrupt is liable to the bank as indorser upon eight separate transactions.

It is entirely clear to me that each transaction must be treated by itself, and that, when a note is paid as the Pickerill note has been, that ends the obligation of the bankrupt estate to the holder of the note.

We are not concerned here with the relations (if any) between the bankrupt estate and the maker of the note. So much of the claim, therefore, as relates to this note must be expunged.

[3] Third. The two notes for which renewal notes were taken from the makers without the indorsement of the bankrupt:

Here again the record is silent as to the time of the transaction, but counsel apparently agree that this took place after the filing of the petition. This is illustrative of the principle that, as between the bankrupt estate and the bank, the status of the parties must be fixed as of the date of the filing of the petition; and here again we are not concerned with such duties as may rest upon the bank in its relation with the makers, or hereafter with the bankrupt estate if the bank should collect in full from the makers. The bankruptcy statute was intended at least to deal with these situations from a practical and common sense point of view. It would be, to say the least, embarrassing from a commercial standpoint, to insist that the holder of a note could not take a renewal note from the maker when the bankrupt is no longer in a position to endorse a renewal note. The obligation is still outstanding and the note still remains unpaid, and the claim, therefore, is a real claim for an unpaid obligation, and the situation is not similar in principle to that of the Pickerill note.

The object of proving claims in bankruptcy is to set forth what is owed to the claimant, and, as nothing was owed on the Pickerill note, there was no claim in respect thereof; but the case of the other two notes differs from the usual situation of accepting a renewal note without indorsement, because an independent act, to wit, the petition in bankruptcy with the consequent adjudication, has occurred.

To require the holder of a note in such circumstances to refuse or decline to accept a renewal from the maker, unless the bankrupt indorser again indorse such renewal note, would be to call upon the holder to perform a useless act which would have no effect. The principle of release applicable where an indorser does not indorse a renewal note does not apply after bankruptcy.

If therefore I correctly understand that these renewal notes were given after the petition in bankruptcy, then the order of the referee must be reversed in that regard. Of course, if these renewal notes were given before the bankruptcy, then the indorser was released.