606

## In re WARDEN.

District Court, W. D. Virginia, at Harrisonburg. Jan. 30, 1934.

James M. Mason, Jr., of Charles Town, W. Va., for bankrupt.

Moore & Williams, of Berryville, Va., for Bank of Clarke County.

PAUL, District Judge.

There has been certified to me for review an order entered by the referee in bankruptcy on July 29, 1933, and among the questions presented for review is the following: Whether the referee erred in disallowing the claim of the Bank of Clarke County, aggregating the sum of $19,775.

At the time of the adjudication in bankruptcy, the bankrupt was an indorser, along with others, upon certain notes held by the Bank of Clarke County, and of which Berryville Basket Company was the maker. None of these notes, which aggregated $19,775, was due at the time of the adjudication. The bankrupt listed these notes in his schedule of liabilities and at the first meeting of creditors the bank filed its proofs of debt upon the notes. Its right to do so is not questioned. See Maynard v. Elliott, 283 U. S. 273, 51 S. Ct. 390, 75 L. Ed. 1028.

However, as the notes thereafter matured, the maker and remaining indorsers made slight curtails upon them and gave new notes for the remaining amount thereof, upon which the bankrupt was not an indorser. In other words, as the notes became due, the maker followed a familiar and usual practice of paying a small amount on them and tendering a new note (commonly called a "renewal note") for the balance. These renewal notes carried the same indorsers as the old notes, except that the bankrupt was not an indorser upon the new notes. The bank appears to have accepted the new notes, but it appears also that it retained and still retains the notes upon which the bankrupt is indorser. Just what was the intention of the bank in retaining the old notes is not made clear other than by the statement of its counsel that "the bank accepted renewals endorsed by the previous endorsers other than Mr. Warden, with the understanding that the bank would prosecute its claim against the estate of Mr. Warden for the use and benefit of the other endorsers." There is no evidence as to any understanding or agreement had by the bank with the maker or indorsers of the new notes as to the conditions upon which the bank accepted the new notes.

After it was learned that the bank had accepted the renewal notes, certain creditors moved to disallow and expunge the claim filed by the bank against the bankrupt upon the ground that the acceptance of the renewal notes operated to release the bankrupt from liability upon the notes upon which he was indorser. This motion was granted by the referee, who relies upon the doctrine that the indorser of a negotiable instrument is released where, without his consent, an extension of time for payment is granted the maker. The referee cites section 5682, cl. 6, Code of Virginia 1919 (section 120, Negotiable Instruments Law), which provides:

"A person secondarily liable on the instrument is discharged— * * *

"6. By any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

The referee then says: "Under this statutory provision, which is declaratory of the common law, Warden as endorser was released because he refused, after the filing of his petition in bankruptcy, to renew the notes and there is no evidence tending to show that the right of recourse against him was expressly reserved."

I am unable to agree with this view. I find little in the decided cases bearing on the exact situation here, but the same question was passed on in Matter of Henry & S. G. Linde-

man, Bankrupts (D. C. of N. Y.) 238 F. 639, 641. In that case a bank was the holder of a number of notes upon which the bankrupt was indorser, and, after the filing of the petition in bankruptcy, the bank accepted renewals of two of these notes without the bankrupt's indorsement. The trustee objected to the allowance of the bank's claim on a number of the notes, but we need consider only those expressions of the court relating to the two notes that had been renewed. Judge Mayer, after calling attention to the fact that under the law of New York the holder of a note may recover from the maker or the indorser, as he pleases, or recover as far as he can from one and recover the remainder from the other (which is also the law in Virginia), says:

"Third. The two notes for which renewal notes were taken from the makers without the indorsement of the bankrupt:

" * * * Counsel apparently agree that this took place after the filing of the petition. This is illustrative of the principle that, as between the bankrupt estate and the bank, the status of the parties must be fixed as of the date of the filing of the petition; and here again we are not concerned with such duties as may rest upon the bank in its relation with the makers, or hereafter with the bankrupt estate if the bank should collect in full from the makers. The bankruptcy statute was intended at least to deal with these situations from a practical and common sense point of view. It would be, to say the least, embarrassing from a commercial standpoint, to insist that the holder of a note could not take a renewal note from the maker when the bankrupt is no longer in a position to indorse a renewal note. The obligation is still outstanding and the note still remains unpaid, and the claim, therefore, is a real claim for an unpaid obligation. * * * The case * * * differs from the usual situation of accepting a renewal note without indorsement, because an independent act, to wit, the petition in bankruptcy with the consequent adjudication, has occurred.

"To require the holder of a note in such circumstances to refuse or decline to accept a renewal from the maker, unless the bankrupt indorser again indorse such renewal note, would be to call upon the holder to perform a useless act which would have no effect. The principle of release applicable where an indorser does not indorse a renewal note does not apply after bankruptcy."

With the above opinion I incline to agree, not only because of the ability and learning of the judge who uttered it, but because, in my opinion, it sets forth the practical and common sense point of view which, as Judge Mayer comments, was intended by the bankruptcy statute to be applied to such situations.

It was to be expected, of course, that Warden would refuse to indorse the renewal notes after he became a bankrupt. Having instituted proceedings for the very purpose of dividing his estate among his creditors and procuring a discharge from his debts, it would have been most unusual had he immediately thereafter, and after being stripped of all his property, voluntarily assumed an obligation of almost $20,000. He could not be compelled to indorse the renewal notes. Whether he refused to sign them or whether he was not asked to do so, is in my opinion of no moment.

It is contended that there were two courses open to the bank in respect to these notes: one of which was to prove its debt against the bankrupt and proceed against the maker and coindorsers; the other was to renew the notes and look for ultimate payment from the maker and the indorsers other than Warden, abandoning all claim against the latter. In other words, it is contended that, inasmuch as Warden's indorsement on the renewal notes could not be obtained, the bank was compelled to surrender all claim against him unless it forthwith brought suit against the maker and the other indorsers.

■ But this overlooks the fact that in this state (where the Negotiable Instruments Law has been enacted) the holder of a note need not proceed against the maker before going after the indorser; nor is he compelled to proceed against them at the same time. He can ignore the maker and proceed against the indorser, or he can elect to proceed against any one or more of a number of indorsers. "Every endorser is liable directly to the holder of the instrument." 3 R. C. L., p. 1119. In the instant case the bank would have had the right to attempt collection of the notes from Warden without first exhausting its remedies against the maker. In fact, it did proceed against Warden promptly. It could not sue him—or it would have been useless to— because he had been adjudicated bankrupt and all of his property and the disposition of his debts was in the custody and control of this court. But the bank did proceed in the only way open to it, namely, by asserting its claim against him for liability on the notes and proving that claim in the bankruptcy proceeding. But it was not compelled, as a condition of the attempt to collect from Warden, to bring suit against the maker or other

indorsers. I do not think that Warden is in a position to complain because the bank, after promptly asserting its rights against him, may have entered into some arrangement looking to the form in which it would assert its rights against the maker and other indorsers in case it failed to collect in full from Warden.

The holder of the notes proceeded promptly against Warden and the latter, upon maturity of the notes, or even before, had full and effective notice that the bank was asserting against him the full measure of his liability. Nothing has been done to jeopardize or impair his rights or opportunities for recourse against the maker. There is nothing here which invokes the reason behind the rule that an indorser is discharged by an extension of time to the maker. And in the entire absence of the conditions upon which the reason for the rule is founded, the rule itself should not apply.

Relying upon the foregoing as determining the question before me, I might add the following thought to what has been said: The rule is that an extension of time to the maker of a note does not operate to release an indorser if at the time the holder reserves his rights against the indorser. In the instant case, the bank had, before the renewal notes were given, actually undertaken to enforce its rights against Warden as an indorser by proceeding against him in the manner prescribed by law. When the alleged extension was granted the maker, the bank was already in court trying to collect from the indorser. I can hardly conceive of a clearer or stronger declaration of its intention to reserve all rights against Warden.

I think there was error in expunging the claims of the bank.